SO ORDERED: April 28, 2008.



James K. Coachys
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| IN RE: ) | |
| ) | |
| AMERICAN RESTORATION CORPORATION ) | |
| a/k/a DYNAMIC HEALTH NETWORK ) | |
| INTERNATIONAL ) | CASE NO. 05-08185-JKC-7A |
| ) | |
| Debtor. ) | |
| _____) | |
| PAUL D. GRESK, as Chapter 7 Trustee, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | ADV. PRO. NO. 06-50341 |
| ) | |
| ADAMS REMOVAL & HAULING, INC., ) | |
| ) | |
| Defendant. ) | |

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**

This matter came before the Court on the Amended Complaint of Plaintiff Paul D. Gresk, as the Chapter 7 Trustee, (the "Trustee") against Defendant Adams Removal & Hauling, Inc. ("Adams"). Following a trial on March 26, 2008, the Court took the matter under advisement and now issues the following Findings of Fact and Conclusions of Law.

**<u>Findings of Fact</u>**

1.      On May 2, 2005, American Restoration Corporation ("Debtor") filed a voluntary Chapter 11 bankruptcy petition. The case was later converted to Chapter 7.

2.      On September 5, 2006, the Trustee filed an Amended Complaint against Adams seeking to recover, as preferential transfers under 11 U.S.C. § 547(b), $61,660.00 allegedly paid by Debtor to Adams within 90 days of the bankruptcy filing. On November 11, 2006, Adams filed an Answer to the Trustee's Amended Complaint. The Answer generally denied the Trustee's allegations and raised no affirmative defenses.

3.      Thereafter, the parties filed with the Court separate Pre-Trial Statements pursuant to which they stipulated that Debtor and Adams maintained a business relationship pursuant to which Adams provided services to Debtor; that between March 2, 2004 and January 25, 2005, Adams issued several invoices to Debtor totally $61,600.00 for services provided; and that within 90 days of its bankruptcy filing, Debtor made $61,600.00 in payments to Adams to satisfy the amounts due and owing.

4.      At trial, the parties amended their prior stipulations and orally stipulated that Debtor's payments to Adams made within the 90-day preference period satisfied all of the essential elements of 11 U.S.C. § 547(b). That is, the parties agreed that all of the payments subject to avoidance were made: (1) to or for the benefit of Adams; (2) for or on account of antecedent indebtedness owed by Debtor to Adams; (3) at a time when Debtor was insolvent; (4) within 90 days before the filing of Debtor's petition and (5) such that Adams received more than it would have received in a Chapter 7 liquidation.

5.      The parties further agreed that the amount of transfers made in the preference period

2

was $46,685.00, instead of $61,500.00 as previously agreed (the "Transfers").

6. The parties further agreed that the only issue for the Court's determination is whether the Transfers are excepted from avoidance pursuant to 11 U.S.C. §547(c)(2)'s "ordinary course" defense and, in particular, whether the Transfers were made "according to ordinary business terms" within the meaning of § 547(c)(2)(C).[1]

7. At trial, the parties stipulated to the admissibility of an unlabeled document detailing the dates of the subject invoices from Adams to Debtor's "date of payment" of them (the "Reconciliation"). The Reconciliation also calculated the purported time lag between such invoicing date and the "date of payment."

8. The Transfers were made via three checks, all drawn on Debtor's bank account at Union Planters Bank. The checks indicate the following details:

(a) Check No. 12610 dated 2/7/05 in the amount of $15,000.00 (and honored on on 2/8/05);

(b) Check No. 12954 dated 3/4/05 in the amount of $20,000.00 (honored on 3/4/05);

(c) Check No. 13097 dated 4/8/05 in the amount of $11,685.00 (honored on 4/11/05).

9. According to the Reconciliation, the three checks paid, either in full or in part, 22 invoices that Adams issued to Debtor between January 3, 2005 and March 22, 2005 (the "Invoices").

10. For its payment terms, each of the Invoices stated that it was "[d]ue on receipt." The the Invoices further indicated that the "Due Date" was the same date as the date of the Invoice.

11. According to the Reconciliation, Debtor paid the Invoices within a time span ranging from 13 to 45 days of their issuance, with an average time lag of 28.88 days.

---

[1] The Trustee stipulated at trial that the requirements of § 547(c)(2)(A) and (B) had been satisfied.

12. As evidence of Debtor's adherence to "ordinary business terms" within the meaning of §547(c)(2)(C), Adams presented three unsworn letters from persons purporting to have various experience with commercial hauling.

13. The first letter is from Daniel Donas, who identifies himself as "having been involved in the commercial hauling business for 21 years," and that he was "the former owner of Atlas Scavenger Service," located in Indianapolis, Indiana. Donas's letter further states "the stated terms for established hauling customers is typically 'net 30 days'" but that, according to his experience, "established customers" pay their accounts between 30-60 days from the invoice date.

14. The second letter is from Daniel J. Johnson, who identifies himself as the owner of Johnson Quality Construction, located in Indianapolis, Indiana. In the letter, he states that he has "been involved in the construction industry many years since 1998" and asserts that "the stated terms for established hauling customers is typically 'net 30 days' but that based on his personal experience, "hauling companies expect payment on accounts within 60 days of the invoice date."

15. The third letter is from Bob Landrum, Vice President of Landrum, Inc., which is also located in Indianapolis, Indiana. In the letter, he states that he has "been in the commercial hauling business for thirty-nine years." The letter further states that it was Landrum's practice to allow established customers to pay their invoices in "net 30 days." The letter additionally states that Landrum "would not seek remedial action on an account paid within 30 days of the invoice date."

16. Aside from these letters, the only other evidence Adams offered in support of its position that Debtor's payments were "according to ordinary business terms" came from Adams' owner, who testified that Adams had been engaged in business with Debtor for approximately 3 years and had never tried to enforce its "due on receipt" terms with Debtor or any of its other

4

customers.

17. By way of contrast, the Trustee offered testimony from Rod Hall, a certified public accountant with the Indianapolis firm of Hall & Associates. Hall testified that the term "due on receipt" carried a general commercial meaning of "immediate payment," which, he testified, carried with it a practical meaning that payment was to be received within 7 to 10 days. Hall reasoned that a recipient of such a "due on receipt" invoice would generally not receive it through regular mail for 2 to 3 days and would not pay it for another day or two following receipt. Thereafter, the invoicing party would generally not receive the debtor's check through the mail for yet another couple of days.

## Conclusions of Law

1. The Court has jurisdiction of this adversary proceeding pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157.

2. Section 547(c)(2) provides:

(c) The trustee may not avoid under this section a transfer . . .
(2) to the extent that such transfer was–
(A) in payment of a debt incurred by the debtor in the ordinary course of business or financial affairs of the debtor and the transferee;
(B) made in the ordinary course of business or financial affairs of the debtor and the transferee; and
(C) made according to ordinary business terms.

3. Section 547(c)(2) constitutes an affirmative defense to a § 547(b) avoidance action. To prevail, the defendant must establish the defense by a preponderance of the evidence. 11 U.S.C. § 547(g).

4. The defense is to be narrowly construed. *Payne v. Clarendon Nat'l Ins. Co. (In re Sunset Sales, Inc.)*, 220 B.R. 1005, 1020 (10th Cir.BAP 1998); *Jobin v. McKay (In re M & L Business*

5

*Machine Company, Inc.)* 84 F.3d 1330, 1339 (10th Cir. 1996); *In re Tolona Pizza Prods. Corp.*, 3 F.3d 1029, 1032 (7th Cir.1993) ("Preferences are disfavored, and subsection C makes (terms wholly unknown to the industry) more difficult to prove.").

    5.    Courts analyzing § 547(c)(2) have concluded that the purpose of the "ordinary business terms" prong of § 547(c)(2)(C) is to subject suspect transfers to an "objective test," requiring the transferee to come forward with credible evidence that the transfer under consideration conformed to business terms common to the industry or to generally accepted business practices. *In re Energy Co-op, Inc.*, 832 F.2d 997, 1004 (7th Cir.1987); *In re Fred Hawes Organization, Inc.*, 957 F.2d 239, 244 (6thCir.1992). As such, under §547(c)(2)(C), the Court must compare and contrast the particular transactions and measure them against the "practices" or "standards" of the industry. "A transaction is deemed objectively ordinary if it does not deviate from industry norms and conforms to industry custom." *Morris v. Kansas Drywall Supply Co.*, (*In re Classic Drywall, Inc.*) 121 B.R. 69, 75 (D.Kan.1990). Transfers made in an unorthodox or illegal manner or outside the normal business practice of a similar properly-run business normally are not protected from preference recovery. To similar effect, in *Tolona Pizza*, 3 F.3d at 1033, the Seventh Circuit noted that "ordinary business terms" under §547(c)(2)(C) "refers to a range of payment terms encompassing the practices of firms similar to that of the creditor and that only dealings so idiosyncratic as to fall outside that broad range should be deemed extraordinary and therefore outside the scope of that subsection."

    6.    In light of this authority, it was incumbent upon Adams to present the Court with credible evidence establishing the range of acceptable practices within the commercial hauling industry against which the Transfers can be measured. *See In re Marchfirst, Inc.*, 381 B.R. at 696.

In the case of *In re Gulf City Seafoods, Inc.*, 296 F.3d 363 (5th Cir.2002), the Fifth Circuit laid out a standard for the sufficiency of evidence on this issue. "In our view, for an industry standard to be useful as a rough benchmark, the creditor should provide evidence of credit arrangements of other debtors and creditors in a similar market, preferably both geographic and product." *Id*. at 369. In *Tolona Pizza*, the sworn testimony of an insider of the creditor was sufficient to prove the "ordinary course of business" in the relevant industry. *Tolona Pizza*, 3 F.3d at 1033. In *In re Apex Automotive Warehouse*, 245 B.R. 543 (Bankr.N.D.Ill.2000), the court opined that a creditor "must present evidence of the actual practices of its competitors." *Id.* at 550. Likewise, in addressing the quality of evidence necessary to satisfy a creditor's burden under §547(c)(2)(C) the court in *Marchfirst* stated:

> The proper inquiry under § 547(c)(2)(C) focuses on the credit practices of the creditor's competitors…three types of evidence [are] typically used as proof: (1) evidence procured directly from competitors…(2) the testimony of expert witnesses concerning industry credit practices, and (3) the testimony from the transferee's own employees, if any, who have personal knowledge of the credit practices used by competitors. The court in *In re Midway Airlines, Inc.*, 69 F.3d 792 (7th Cir. 1995) expressly rejected the transferee's reliance solely on its own practices. *H. L. Hansen Lumber Co. v. G & H Custom Craft, Inc. (In re H.L.HansenLumber Co.)*, 270 B.R. 273. (Bankr.C.D.Ill.2001). Since the burden of proof on this defense is on the defendant, 11 U.S.C. § 547(g), IDC is not entitled to judgment on the defense of ordinary course of business.

*Marchfirst*, 381 B.R. at 697.

      7.     In view of the foregoing, the Court hereby concludes that Adams failed to carry its burden of presenting persuasive evidence of relevant industry practices. The testimony of Adams' owner addressed only Adams' own practices. She offered no testimony as to her first hand knowledge of any general industry credit practices or indicate in any way how Adams' own credit extension methods were consistent with those of its competitors. While her testimony was perhaps

somewhat relevant to the "subjective" analysis mandated under §547(c)(2)(A) and (B), those "prongs" of § 547(c)(2) were not at issue and had, indeed, been stipulated by the Trustee as having been satisfied.

8.   The three letters which Adams submitted to satisfy the requirements of §547(c)(2)(C) were likewise insufficient to meet Adams' burden of proof.  The letters failed to address the "due on receipt" provisions of the Invoices.  The letters generally stated that "established customers" qualified for "net 30 days" invoicing treatment, with customer payment thereafter expected to follow within "30 to 60 days."  In contrast, the Invoices were not "net 30-days."  Rather, the Invoices state that payment was "due on receipt."  How Adams' invoicing practices could be likened to the supposed norms referenced in the letters is not explained.  An express demand for immediate payment–which is the plain meaning of "due on receipt"–is entirely inconsistent with a supposed industry-wide practice of "net 30" for "established customers."

9.   Adam's payment policy with respect to Debtor was not shown by a preponderance of the evidence to conform to industry-wide norms either.  Landrum's letter indicated that his practice was not to take "remedial action" on unpaid invoices which were less than 30 days old.  Aside from the fact that this seems to have been a personal practice on his part and not necessarily one that was industry-wide, according to the Reconciliation, 11 of the Invoices were paid beyond 30 days by Debtor, making their payment timing "extraordinary" and, therefore, ripe for "remedial action" from Landrum's viewpoint.  While the Donas and Johnson letters stated that established customers typically paid in "30 to 60 days," neither their letters, nor Landrum's, addressed the situation presented here where invoices that were "due on receipt" were not only paid immediately but were also only partially paid.

8

10. Based on the foregoing, the Court concludes that Adams has failed to prove by a preponderance of the evidence that the Transfers were "made according to ordinary business terms" within the meaning of 11 U.S.C.§ 547(c)(2)(C). Therefore, the Transfers are avoided pursuant to § 547(b)(2).

11. The Court will issues a separate Judgment consistent with these Findings of Fact and Conclusions of Law.

###

Distribution:
Paul D. Gresk
Harley K. Means
UST